**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL CROSSEY,<br>605 Garden Circle<br>Bridgeville, PA 15017, | Case No. |
| Plaintiff | |
| v. | |
| PENNSYLVANIA STATE EDUCATION<br>ASSOCIATION PENSION PLAN<br>400 North 3rd Street<br>Harrisburg, PA 17105-1724 | |
| and | |
| BOARD OF DIRECTORS OF THE<br>PENNSYLVANIA STATE EDUCATION<br>ASSOCIATION PENSION PLAN<br>400 North 3rd Street<br>Harrisburg, PA 17105-1724 | |
| and | |
| RICH ASKEY, DIRECTOR<br>356 Dorwart Circle<br>Etters, PA 17319 | |
| and | |
| JEFFREY NEY, DIRECTOR<br>703 Metcalf Street<br>Wilkes Barre, PA 18702 | |
| and | |
| JAMES HENNINGER-VOSS, DIRECTOR<br>250 Fisher Road<br>Etters, PA 17319-9754 | |
| and | |

TODD MILLER, DIRECTOR
104 Terrace Heights
Honesdale, PA 18431-1212

and

STEVE NICKOL, DIRECTOR
c/o PSEA Headquarters
400 North 3rd Street
Harrisburg, PA 17105-1724

and

MELVA VOGLER, DIRECTOR
315 Penn Ave
Hawley, PA 18428-1419

and

JAMES VAUGHAN, DIRECTOR
217 North Point Drive
Manheim, PA 17545-8203,

                    Defendants.

## **COMPLAINT**

Plaintiff Michael Crossey, through his undersigned counsel and for his Complaint against Defendants the Pennsylvania State Education Association Pension Plan ("the Plan"), the Board of Directors of the Pennsylvania State Education Association Pension Plan ("the Board"), and Rich Askey, Jeffrey Ney, James Henninger-Voss, Todd Miller, Steve Nickol, Melva Vogler, and James Vaughan (collectively, "the Directors"), states as follows:

2

## INTRODUCTION

1.     This is an action for Plan benefits and for equitable relief resulting from Defendants' failure to administer the Plan in accordance with the terms of the Plan and applicable law. The Board, its constituent Directors, and its service providers breached their fiduciary duties to Mr. Crossey as a result of their miscalculation of his pension benefits, their failure to promptly identify that miscalculation, the resulting alleged overpayment of his pension benefits, and the subsequent decision to reduce Mr. Crossey's pension and recoup the alleged overpayment of his pension benefits after identifying and admitting their mistakes. In short, Mr. Crossey seeks the Court's relief from Defendants' attempt to make him and his family bear the consequences of the repeated errors of the Plan, its employees, service providers, and fiduciaries.

## THE PARTIES

2.     Mr. Crossey is a 68-year old retired school teacher and former employee of the Pennsylvania State Education Association ("PSEA") who retired in August 2016.

3.     The Plan is a single employer, employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA").

4.     The Plan provides retirement and related benefits to eligible Plan participants pursuant to the terms of its Plan document throughout the Commonwealth of Pennsylvania, including in the Eastern District of Pennsylvania.

5.     PSEA is a not for profit labor association organized and existing under the laws of the Commonwealth of Pennsylvania that represents more than 187,000 teachers, educational support professionals, counselors, curriculum specialists, librarians, health care workers, school nurses, school dental hygienists, school psychologists, school social workers, vocational-technical

instructors, community college and junior college educators, students and retirees throughout the Commonwealth of Pennsylvania.

6.    PSEA sponsors the Plan, and the Board serves as the Plan's Administrator as that term is defined in Section 3 of ERISA, 29 U.S.C. § 1002. The Board's members are individually and collectively Plan fiduciaries.

7.    As the entity and individuals responsible for both approving claims for Plan benefits and for paying those benefits, the Board operates under an inherent conflict of interest as a matter of law.

8.    Defendant Rich Askey was, and may still be, a Director of the Plan and a Plan fiduciary.

9.    Defendant Jeffrey Ney was, and may still be, a Director of the Plan and a Plan fiduciary.

10.    Defendant James Henninger-Voss was, and may still be, a Director of the Plan and a Plan fiduciary.

11.    Defendant Todd Miller was, and may still be, a Director of the Plan and a Plan fiduciary.

12.    Defendant Steve Nickol was, and may still be, a Director of the Plan and a Plan fiduciary.

13.    Defendant Melva Vogler was, and may still be, a Director of the Plan and a Plan fiduciary.

14.    Defendant James Vaughan was, and may still be, a Director of the Plan and a Plan fiduciary.

15.     Mr. Crossey is, and at all times relevant to this Complaint has been, a participant in the Plan who receives pension benefits from the Plan.

16.     The Plan's assets are held in a trust, as is required by ERISA. That trust is funded by employee and employer contributions for the benefit of Plan participants and their beneficiaries.

17.     According to its most recent funding notices and Form 5500 Annual Report, the Plan is more than 100% funded, which means its reserves exceed its pension obligations.

## JURISDICTION AND VENUE

18.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

19.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania for several reasons.  First, the Plan was and is administered by the Board in this District.  Second, Defendant James Vaughan resides in Lancaster County and is domiciled in this District.  Third, the Plan is deemed to reside in this District.  29 U.S.C. § 1132(e); 28 U.S.C. § 1391.

20.     The Court has personal jurisdiction over Defendants as the Plan is administered in this Commonwealth, within this District, and Defendants regularly transact business in this District.

21.     Section 503 of ERISA, 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit claim denials.  Those avenues of appeal have been exhausted.

## FACTS COMMON TO ALL COUNTS

22.     Mr. Crossey began working at the Keystone Oaks School District ("the School District") in 1978.

23.     On or about September 1, 2007, Mr. Crossey became an employee of PSEA and a participant in the Plan following his election and installation as PSEA's Vice President.

24.     From the inception of Mr. Crossey's employment until 2013, Mr. Crossey also remained an employee of the Keystone Oaks School District.  During this period of time, PSEA was ultimately responsible for compensating Mr. Crossey and it reimbursed the School District for the cost of Mr. Crossey's salary and the contributions it made to the Pennsylvania Public School Employees Retirement System ("PSERS") attributable to his employment with the School District.

25.     Pursuant to Article VI of the Plan, Plan participants who received pension credit under PSERS may, prior to retirement, purchase up to 12 years of additional service credit under the Plan in order to increase the value of the participant's monthly retirement benefit under the Plan upon retirement.  Section 6.2(c) of the Plan provides for a further step to be performed when a Plan participant ends a period of shared employment between PSEA and a secondary employer, like the School District, to calculate the cost of additional service credit and/or the amount of a retirement benefit.

26.     In October 2007, Mr. Crossey requested an estimate of the cost to purchase an additional 12 years of pension service credit from the Plan.

27.     In November 2007, Mr. Crossey was provided with an estimate of the cost of purchasing 12 twelve years of additional service credit under the Plan.  The cost estimate did not consider that Mr. Crossey remained an employee of the School District and that PSEA reimbursed

the School District for Mr. Crossey's wages. Instead, it only considered those wages attributable to Mr. Crossey's employment with PSEA.

28.    In December 2007, Mr. Crossey decided that he was not yet interested in purchasing 12 years of additional service credit and elected to defer the decision to a later date.

29.    Mr. Crossey was elected as PSEA's President in 2011 and assumed that position effective as of September 1, 2011.

30.    In June 2013, Mr. Crossey completed an Application for Purchase of Service Credit under the Plan.

31.    On July 2, 2013, the Plan's then-actuaries, Milliman, Inc. ("Milliman"), prepared a recalculation of the cost of purchasing 12 years of service credit under the Plan.

32.    Milliman calculated that the cost of 12 years of service credit purchased in a lump sum was $123,838.32.

33.    Milliman, like the Plan's prior actuary, did not consider that Mr. Crossey remained an employee of the School District and that PSEA reimbursed the School District for Mr. Crossey's wages. Instead, it considered only those wages of Mr. Crossey that were attributable to his employment with PSEA.

34.    PSEA's human resources personnel endorsed Milliman's calculation without question or qualification and presented it to Mr. Crossey for his review.

35.    On July 3, 2013, in reliance of the calculations Milliman performed, Mr. Crossey agreed to pay the Plan $123,838.32 for the additional 12 years of service credit. Gerard L. Brandon, on behalf of the Plan, countersigned the agreement as an "Approving PSEA Official."

36.     Just over a month later, on August 7, 2013, Todd C. Park, PSEA's Assistant Executive Director for Human Resources, further ratified that agreement by signing his name to it as an "Approving PSEA Official."

37.     The Board, in failing to disapprove of or otherwise object to the purchase of the service credit, ratified Mr. Crossey's purchase of the additional service credit.

38.     Based on the information provided to him by the Plan's actuary and personnel regarding his retirement benefits from PSEA and cost of the 12 additional years of service credit, Mr. Crossey retired from the Keystone Oaks School District, effective as of November 27, 2013.

39.     The Plan, PSEA, their personnel, and the Directors were aware of Mr. Crossey's retirement from the School District.

40.     At no point in time following his retirement from the School District was Mr. Crossey told that his purchase of service credit was subject to recalculation or that his benefit would not reflect the total compensation he was paid by PSEA.

41.     In December 2013, Mr. Crossey began the process of requesting a direct rollover of funds from his PSERS retirement account to the Plan in order to pay for the additional service credit he had agreed to purchase.

42.     On April 7, 2014, the Plan received and accepted a direct rollover of $123,768.39 to pay for the additional 12 years of service credit. The Plan provided Mr. Crossey with a receipt of this payment on or about April 22, 2014.

43.     Because the rollover amount was short by $69.93 for some unknown reason, Mr. Crossey paid for the outstanding balance via a payroll deduction after June 16, 2014.

44.     By electing to retire from the School District and rolling over the funds from his PSERS account to the Plan to pay for the additional 12 years of service credit under the Plan, Mr.

Crossey reduced the value of his PSERS retirement benefit. Moreover, Mr. Crossey lost the opportunity to use those funds for other investment opportunities.

45.     On April 22, 2015, Mr. Crossey requested an estimate of his retirement benefit, assuming August 2016 retirement.

46.     In August 2015, Mr. Crossey's second term as PSEA President came to an end, and he commenced a paid leave of absence as he used his accumulated paid time off from the organization.

47.     On December 4, 2015, Bolton Partners, the Plan's then-current actuary, sent the Plan an estimate of Mr. Crossey's retirement benefit, taking into consideration the 12 years of service credit he had purchased in 2014, the Plan's past practices in calculating retirement benefits, and assuming an August 9, 2016 retirement date.

48.     The estimate of Mr. Crossey's retirement benefit was calculated based on the total service credit he purchased and the compensation he received from PSEA.  No distinction was made for the period of employment during which Mr. Crossey also remained a School District employee.

49.     After receiving his retirement benefits calculations, Mr. Crossey continued to correspond with PSEA personnel regarding his various retirement options under the Plan and how those options would affect his benefit amount.

50.     At no point in time during any of this correspondence did any PSEA personnel, Plan service provider, or Plan fiduciary question or challenge the cost of the additional service credit Mr. Crossey purchased, or the amount of his retirement benefit.

51.     Ultimately, in reliance upon the calculations made by Bolton Partners and reviewed by Plan personnel, Mr. Crossey elected retirement option 6c, which was to pay him or his spouse,

if he predeceased her, a level benefit of $4,165.03 per month for a guaranteed minimum of 240 months.  In addition, he elected to withdraw the contributions he had made to the Plan and to roll them over to a traditional IRA.  Mr. Crossey's employee contributions equaled $153,005.

52.    On July 29, 2016, Mr. Crossey and his wife formally elected to commence his pension benefits as set forth above.

53.    On August 8, 2016, Bolton Partners reconfirmed that amount of Mr. Crossey's pension benefits in a letter to the PSEA, and the amount of his monthly retirement benefit increased slightly from $4,165.03 to $4,206.74.

54.    The Board approved Mr. Crossey's retirement application and the amount of his retirement benefit.

55.    Mr. Crossey commenced his retirement as of August 9, 2016.  $149,759.46 in employee contributions were rolled over into his IRA account on or about August 17, 2016, and Mr. Crossey's initial monthly benefit check was issued on that date as well.

56.    From August 2016 to March 2018, Mr. Crossey received his monthly pension benefits without incident or issue.

57.    Todd Park, PSEA's Assistant Executive Director for Human Resources, sent Mr. Crossey a letter dated March 15, 2018, in which Mr. Crossey was advised:

> As a result of an extensive review conducted by PSEA, the PSEA Pension Directors have determined that there was **an unintentional oversight** in communicating and applying cost options under the Plan related to your purchase of 12 years of past educational service that were credited in full to your final pension benefit calculation. As a result of this oversight, an overpayment situation exits in the benefit you are receiving associated with the 12 years of purchased service at the base cost that was charged to you . . .

A copy of Mr. Park's letter is appended hereto as Exhibit A.  The letter provided Mr. Crossey with three options to rectify the errors of third parties that purportedly resulted in an overpayment of

pension benefits to him, and all of which would result in Mr. Crossey incurring additional expense and/or a reduction in his monthly pension benefit. *Id.*

58.    Mr. Crossey was unaware of any errors or oversights in computing the cost of the 12 years of additional service credit he received under the Plan and was unaware that he had received any benefit in excess of that to which he was entitled.

59.    Mr. Crossey was not responsible for the calculation of the cost of the additional service credit he purchased, nor was he responsible for validating its accuracy. Mr. Crossey relied on the Plan's personnel and service providers to ensure that his benefit amount was calculated correctly and that his purchase of the service credit had been handled correctly. Unfortunately, they failed to do so at every opportunity.

60.    On June 12, 2018, Mr. Crossey submitted an appeal of the Board's adverse claim determination.

61.    The Board was predisposed to denying Mr. Crossey's appeal without giving it due consideration, as is evidenced by a June 12, 2018 email from Laura Piro, CPA, a PSEA employee, in which she stated that the Plan's attorneys and fiduciaries, who owed a duty of loyalty to Mr. Crossey as a Plan participant, were looking for ways to reject Mr. Crossey's argument raised in his appeal.

62.    The Board denied Mr. Crossey's appeal by way of a letter dated June 21, 2018 authored by Plan Counsel.

## COUNT I – CLAIM FOR BENEFITS
## PURSUANT TO SECTION 502(a)(1)(B) OF ERISA

63.    Mr. Crossey repeats, reaffirms, and realleges paragraphs 1 through 62 of the Complaint as if they were fully restated at length herein.

64.     Defendants have made no effort to recoup the alleged overpayment from any source other than Mr. Crossey, including the Plan's service providers that made the computational errors that resulted in the alleged overpayment.

65.     The Plan is devoid of any provision permitting it to recoup overpayments of Plan benefits by offsetting the overpayment against future benefits.

66.     The Plan is devoid of any provision permitting it to charge interest against Plan participants in recouping overpaid Plan benefits.

67.     Defendants' decision to unilaterally recoup the alleged overpayment and interest from Mr. Crossey was contrary to the terms of the Plan and/or an abuse of discretion.

68.     Defendants' decision to charge Mr. Crossey interest on the alleged overpayment of his pension benefits and the calculation of that interest were contrary to the terms of the Plan and/or an abuse of discretion.

69.     The Board's decisions were motivated by their inherent conflict of interest as the fiduciaries responsible for adjudicating and paying claims for Plan benefits.

70.     Defendants' failed to provide Mr. Crossey a full and fair review of his claim as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 by, *inter alia*, failing to provide Mr. Crossey with reasonable access to and copies of all documents, records, and other information relevant to his appeal, including the version of the Plan in effect at the time he purchased the additional service credit at issue.

71.     Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan.

72.    As a result of Defendants' denial of Mr. Crossey's claim for benefits, subsequently upholding that decision on appeal, and the refusal to overturn it in full, there exists an actual case and controversy by and between the parties hereto entitling Mr. Crossey to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Mr. Crossey respectfully requests that the Court enter an order granting him the following relief:

a.    Barring the Board from recouping the alleged overpayment of pension benefits from him;

b.    Reducing or eliminating the interest charged on the overpayment of benefits;

c.    Granting him his costs and reasonable attorneys' fees incurred in pursuing this action pursuant to 29 U.S.C. § 1132(g); and

d.    Awarding him such further relief as it deems is just and proper.

## COUNT II – CLAIM FOR EQUITABLE ESTOPPEL
## PURUSANT TO SECTION 502(a)(3) of ERISA

73.    Mr. Crossey repeats, reaffirms, and realleges paragraphs 1 through 72 of the Complaint as if they were fully restated at length herein.

74.    Defendants made multiple errors, material misrepresentations, and omissions to Mr. Crossey with respect to calculating the cost of purchasing additional service credit under the Plan.

75.    Defendants made multiple errors, material misrepresentations, and omissions to Mr. Crossey with respect to the calculation of his retirement benefit under the Plan.

76.    The existence and extent of those errors did not become known to Mr. Crossey until March 2018 when they were disclosed to him by the Plan.

13

77.    Mr. Crossey relied to his detriment on Defendants' repeated errors, material misrepresentations, and omissions by, *inter alia*, inducing him to retire from the School District, rolling over funds from his PSERS account to purchase additional service credit under the Plan, and in otherwise planning for his retirement.

78.    The Board's conduct constitutes breaches of their fiduciary duty to administer the terms of the Plan as a reasonably prudent person would in accordance with the terms of the Plan and for the sole and exclusive benefit of Plan participants and their beneficiaries such as Mr. Crossey.

79.    Defendants have admitted that the miscalculation of the cost of Mr. Crossey's additional service credit and retirement benefit was an administrative error for which they and the Plan's service providers are responsible.

80.    The Plan has experienced no harm as a result of Defendants' errors and omissions. Its assets far exceed its liabilities, and it was funded based on its assumed liabilities, which included the allegedly incorrectly calculated and overpaid benefit to Mr. Crossey. Mr. Crossey, on the other hand, has experienced significant and demonstrable harm as a result of Defendants' breaches.

81.    Defendants' efforts to recoup the alleged overpayment of benefits to Mr. Crossey are exceptional, inequitable, unnecessary, and have been motivated by their financial self-interest and their effort to shift the responsibility for their fiduciary breaches and failings to Mr. Crossey, while ignoring the fact that the Plan has experienced zero financial harm as a result of their errors and omissions.

82.    In fact, the Plan experiences a financial windfall by recouping money from Mr. Crossey that it has not lost because the Plan had already been funded based on its expected liability to Mr. Crossey, which was the same as his expectation as to the amount of his benefit.

83.    Mr. Crossey has experienced significant financial harm as a result of the actions of the Plan and its employees, service providers, and fiduciaries in miscalculating his benefit and recouping the alleged overpayment of benefits made to him.

WHEREFORE, Mr. Crossey respectfully requests that the Court enter an order granting him other appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an order:

a.    Estopping and barring the Plan and its fiduciaries from reducing his retirement benefit and recouping the alleged overpayment of benefits made to him;

b.    Directing the Board to refund the amounts recouped from Mr. Crossey to date, with interest;

c.    In the alternative, surcharging the Board to pay Mr. Crossey the benefit he believed he was entitled to receive at the time he retired retroactive to the date his benefit was first reduced;

d.    Granting him his costs and reasonable attorneys' fees incurred in pursuing this action pursuant to 29 U.S.C. § 1132(g); and

e.    Awarding him such further relief as it deems is just and proper.

### COUNT III – CLAIM FOR INJUNCTIVE RELIEF
### PURSUANT TO SECTION 502(a)(3) OF ERISA

84.    Mr. Crossey repeats, reaffirms, and realleges paragraphs 1 through 83 of the Complaint as if they were fully restated at length herein.

85.    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), permits the Court to enjoin any act or practice that violates terms of the Plan.

86.    The Plan does not contain any provision permitting the Board or the Plan to recoup an overpayment of Plan benefits and interest due to a benefit calculation error.

87.    Section 404 of ERISA, 29 U.S.C. § 1104, requires the Board to administer the Plan in accordance with the terms of the Plan document.

88.    The Board's effort to recoup the alleged overpayment of Plan benefits from Mr. Crossey is in contravention of the terms of the Plan and a breach of their fiduciary duty.

WHEREFORE, Mr. Crossey respectfully requests that the Court enter an order enjoining the Board from:

a.    Recouping its asserted and alleged overpayment of Plan benefits with interest from Mr. Crossey;

b.    Refunding the amounts recouped from Mr. Crossey to date, with interest;

c.    Granting him his costs and reasonable attorneys' fees incurred in pursuing this action pursuant to 29 U.S.C. § 1132(g); and

d.    Awarding him such further relief as it deems is just and proper.

Respectfully submitted,

Adam Harrison Garner (Bar I.D. 320476)
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com

Dated: April 5, 2019

# Exhibit A

**PSEA** PENNSYLVANIA
STATE EDUCATION
ASSOCIATION

400 North Third Street
P.O. Box 1724
Harrisburg, PA 17105-1724

(717) 255-7000 • (800) 944-PSEA (7732)
Fax: (717) 255-7128
www.psea.org

Dolores McCracken, *President*
Richard W. Askey, *Vice President*
Jeffrey D. Ney, *Treasurer*
James G. Vaughan, *Executive Director*

March 15, 2018

Michael J. Crossey
491 Old Farm Road
Pittsburgh, PA 15228

Re:    Important Notice on Pennsylvania State Education Association (PSEA) Pension Plan (Plan) Benefits related to Purchase of Service – Corrective Action Needed

Dear Michael:

As a result of an extensive review conducted by PSEA, the PSEA Pension Directors have determined that there was an unintentional oversight in communicating and applying cost options under the Plan related to your purchase of 12 years of past educational service that were credited in full to your final pension benefit calculation. As a result of this oversight, an overpayment situation exits in the benefit you are receiving associated with the 12 years of purchased service at the base cost that was charged to you as further described below.

On August 9, 2016 you retired from PSEA with 12 years of purchased service benefit in addition to your PSEA service benefit of 9.0817 years. The purchase service cost calculations for the 12 years were based on the $45,370 partial salary you were being paid directly by PSEA on your September 1, 2007 hire date (i.e. elected officer date). Subsequent to the purchase of service you changed your employment status with PSEA by retiring from your school employer and becoming a fully compensated employee of PSEA with a final annual salary being directly paid by PSEA of $190,176.

Section 6.2(c) of the Plan describes options for a participant who initiates a purchase of service during a time where they are jointly compensated by both PSEA and another entity, and then later changes his employment status such that he is fully compensated directly by PSEA. When this scenario occurs, the Plan provides for the following options with respect to any purchase service years with a choice to be made by the participant:

1) Do not make additional purchase service contributions and the cost of the purchase will be based on the partial salary level on the date of hire and the pension benefit associated with the purchase service years will be based on a lower Average Monthly Compensation than the actual PSEA service years. Under this choice only the actual PSEA service years will reflect any fully compensated salary included in the Average Monthly Compensation. The purchased service years will reflect a proration of the fully compensated salary based on the percentage of the partial salary being paid by PSEA at the time of hire over the total salary.

OR

2) Make additional purchase service contributions (i.e. "buy-up" the purchase) and the cost of the purchase will be recalculated to include the cost impact of including any fully compensated salary in the Average Monthly Compensation used in the pension benefit associated with the purchase service years. Under this choice both the purchase service years and the actual PSEA service years will reflect any fully compensated salary included in the Average Monthly Compensation.

The PSEA Mission

*We are members who promote, protect, and advocate for our schools, students, and professions.*
Affiliated with the National Education Association

The cost of your 12 purchase service years was based on a partial salary level however your benefit associated with the years purchased included the fully compensated salary you received from PSEA. The result is that you have not been charged enough to sustain your current benefit payment. Because these purchase service options were not communicated to you at the time of your change in employment status (November 27, 2013) we are providing you with these options now and request that you review the options and notify PSEA of your elected option by completing and returning the enclosed election form by no later than May 14, 2018. All of the options (Option 1, 2A, and 2B) presented in the accompanying letter and exhibits have been calculated by the Plan Actuary and have been agreed to by Plan Counsel as acceptable corrective options. Please read the election form carefully and note that under the 2A and 2B "buy-up" options a rollover contribution is the only permissible type of contribution acceptable to the Plan at this time.

If we do not receive your written election by May 14, 2018 PSEA will implement Option 2A as the default election. Your future monthly pension benefit payments will be decreased to the correct amount of $3,092.89 as determined under Option 2A, beginning with your June 1, 2018, pension payment. In addition, you are required to repay to the Pension Plan the cumulative overpayment amount that you received, plus interest at 3%, in order to make the Plan whole. The total cumulative overpayment amount due under Option 2A is $24,836.30 as of May 14, 2018 (see enclosed calculations titled Exhibit III). We request your payment, made payable directly to the PSEA Pension Plan and sent to the following address, by May 14, 2018:

> PSEA Pension Plan Administrator
> Attn. AED for Human Resources
> 400 North Third St.
> Harrisburg, PA 17101

If we do not receive your payment by May 14, 2018, your future monthly benefit payments will be reduced by an additional amount, starting with your June 1, 2018, payment, and continuing for your remaining minimum guaranteed payment period of 18 years, and 2 months, to enable the Plan to recover the overpayment. Because, in that case, repayment will be made over a period of years, interest at 6% will be added to the total amount due to the Plan. Please refer to the attached calculations, prepared by the Plan Actuary, for additional detail.

Please be advised that you have the right to file an appeal of this determination and recalculation of your pension benefit by submitting a written request for review, setting forth any facts upon which your appeal is based, within 30 days of receipt of this letter. A copy of Section 7.4(f) of the PSEA Pension Plan, setting forth the Plan's appeal procedures, is enclosed. Any appeal request should be submitted to the above address.

We apologize for the error. Please contact me at 717-255-7031 if you have any questions.

Sincerely,

Todd Park
AED for Human Resources

Enclosures

Michael J. Crossey
Election of Purchased Service Option under 6.2(c) provisions of the Plan

Please check one of the following options, sign, and date.

_____    Option 1 – I elect to not buy-up my 12 years of purchased service.  I understand my resulting monthly annuity will be reduced to $2,409.60 and a lump sum overpayment of $40,072.10 will be repaid to the Plan by May 14, 2018.  If the overpayment is not repaid in lump sum I understand my annuity will be further reduced to $2,112.36 beginning June 1, 2018 and continuing for 18 years and 2 months.

_____    Option 2A – I elect to buy-up my 12 years of purchased service at a cost of $244,385.37 through rollover contributions and to simultaneously withdraw my rollover contributions.  I understand that no cash will physically need to exchange hands under this option, but that I do have funds available for this rollover purpose.  I understand my resulting monthly annuity will be reduced to $3,092.89 and a lump sum overpayment of $24,836.30 will be repaid to the Plan by May 14, 2018.  If the overpayment is not repaid in lump sum I understand my annuity will be further reduced to $2,908.67 beginning June 1, 2018 and continuing for 18 years and 2 months.

_____    Option 2B – I elect to buy-up my 12 years of purchased service at a cost of $244,385.37 through rollover contributions and to not withdraw my rollover contributions.  I understand that a physical rollover contribution check will need to be paid to the Plan by May 14, 2018. I understand my resulting monthly annuity will not be reduced and no overpayment will need to be repaid to the Plan.


_____          _____
Michael J. Crossey                                          Date


Please return this completed form by no later than May 14, 2018 to:

PSEA Pension Plan Administrator
Attn. AED for Human Resources
400 North Third St.
Harrisburg, PA 17101